UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KYLEAH STREET, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 09-6062 |
| v. | : | MEMORANDUM OPINION |
| ATLANTIC COUNTY JUSTICE FACILITY, et al., | : | & ORDER |
| Defendants. | : | |

This matter is before the Court on a motion for summary judgment filed on behalf of Defendants Atlantic County, Officer William Johnson, and Officer Gilbert Bermudez [61] and on the New Jersey Attorney General's motion to withdraw as counsel, or alternatively for summary judgment, filed on behalf of Harborfields Juvenile Detention Center [64]. Plaintiff has consented to dismissal of her claims against Officer Henry Andrews, Officer Miguel Colon, and Officer Gilbert Bermudez "since discovery has not shown that those Defendants contributed to the Plaintiff's injuries." (Pl. Br., p. 13; Lutz Cert., ¶ 4.) She also has not opposed the motion of Harborfields Juvenile Detention Center.[1] Claims against the State of New Jersey were previously dismissed by this Court. The remaining Defendants are therefore the Atlantic County Justice Facility, Atlantic County, and Officer William Johnson, an employee of Atlantic County. For the reasons set forth below, the motion for summary judgment will be granted in part and denied in part, and the alternative motion for summary judgment made by Harborfields Juvenile Detention Center will be granted.

---

[1]This Court denied Harborfields' earlier motion to dismiss, because the Defendant did not show at that time that it was an arm of the State, incapable fo being sued under 42 U.S.C. § 1983. Through its most recent motion, however, Harborfields has established that it is a physical facility operated by the New Jersey Juvenile Justice Committee, in a building owned by Atlantic County, without ability to sue or be sued.

Background

Plaintiff Kyleah Street instituted this civil rights action in State court as a result of having suffered personal injuries inflicted by a correctional officer on September 27, 2007, when she was seventeen years old. Defendants removed the case to this Court, and Plaintiff has since amended her Complaint. The January 28, 2010 Amended Complaint alleges that while being transported from Harborfields Juvenile Detention Center to the Atlantic County Justice Facility, Plaintiff suffered a head injury at the hands of Defendant Officer William Johnson.

Plaintiff has alleged that she was fully restrained by handcuffs and leg shackles, yet Defendant Johnson "intentionally lifted Plaintiff off the ground and violently slammed her face and head into the concrete and fell directly on top of her." (Am. Compl. ¶ 12.) Regarding the correctional facilities, the Amended Complaint seems to allege negligence in failing to protect Plaintiff from harm. (Am. Compl., Second Count.)

Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986)); accord Fed. R. Civ. P. 56(a). The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c) (1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256–57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party

cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).  In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### 42 U.S.C. § 1983

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution.  See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.  As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws.  See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979).  By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing McCollan).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused

4

by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Teder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of her rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa, 891 F.2d 458, 464 (3d Cir. 1989).

A municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory. Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978). However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of Plaintiff's rights. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). Further, a plaintiff must show that the municipality acted with "deliberate indifference" to the known policy or custom. Canton v. Harris, 489 U.S. 378, 388 (1989). "A showing of simple or even heightened negligence will not suffice." Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. at 397, 407 (1997).

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. Couden, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.). Finally, because qualified immunity is an affirmative defense, the burden of

6

proving its applicability rests with the defendant.  See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

## Analysis

Insofar as Plaintiff has alleged a claim for damages pursuant to 42 U.S.C. § 1983 against the Atlantic County Justice Facility, such claim will be dismissed, as a county jail is not a "person" amenable to suit under § 1983. Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989).  Plaintiff does not argue otherwise.  Regarding Atlantic County, as stated above, a municipality is not liable under 42 U.S.C. § 1983 on a respondeat superior theory.  Monell v. Dept. Soc. Servs. of New York, 436 U.S. 658, 691 (1978).  Although a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind,  the alleged violation of Plaintiff's rights, Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997), Plaintiff has not alleged or shown a policy, attributed it to the county itself, with a causal link between execution of the policy and the injury suffered.  See, e.g., McTernan v. City of York, Pa., 564 F.3d 636 (3d Cir. 2009) ("[A plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was.").  Therefore, summary judgment will be granted as to Atlantic County and the Atlantic County Justice Facility.

As to Defendant Johnson, the Court finds that there are genuine issues of material fact that preclude this Court from entering summary judgment in his favor. For the same reason, a qualified immunity analysis is inapplicable.  Plaintiff testified that she had a previous encounter with Defendant Johnson, where he threatened her

with a nightstick while transporting her in an elevator.  (Street Dep., p. 34, line 12 through p. 35, line 15.)[2]  Therefore, on the day of the incident giving rise to this lawsuit, when there were two vans waiting to transport inmates to court, Plaintiff expressed hesitation about getting on the transport van with Johnson.  (Street Dep., p. 37, lines 3-6; Bartell Dep., p. 13, lines 1-11).  Johnson then made a remark to the effect that he would be riding in the van with Street, just because she did not want him to.  (Street Dep., p. 37, lines 2, 11-12; see also Bartell Dep., p. 18, lines 7-12.)  In turn, Plaintiff made some derogatory, disrespectful remark toward Johnson.  (Street Dep., p. 44, lines 8-11; Johnson Dep., p. 20, lines 18-21 (Street said to Johnson, "I don't like you, bitch.").)  Street testified that Johnson then "slammed" her on her head.  (Street Dep., p. 44, lines 24-25.)  Johnson described what happened as "a use of force," (Johnson Dep., p. 55, lines 24-25), necessitated by Plaintiff pulling away from Johnson's grasp and "striking" him in the throat area.  (Johnson Dep., p. 7, lines 22-24; p. 28, lines 14-24.)

      Officer Bartell testified that Plaintiff's head began bleeding immediately.  (Bartell Dep., p. 21, line 20 through p. 22, line 4.)  Plaintiff testified that Officer Henry Andrews walked Plaintiff into the facility and informed the supervisor that Johnson's actions were "completely uncalled for."  (Street Dep., p. 52, line 22 through p. 53, line 2.)  She also testified that two weeks later, she was still vomiting from what the hospital said was a concussion, and her headaches and blackened eyes persisted for approximately five months.  (Street Dep., p. 55, lines 10-22; p. 60, lines 3-24.)

---

[2] Johnson stated, "I have no idea why inmate Street would say that [she did not want to go to court with Johnson] other than the only other time that I dealt with her, I made her follow the rules and she did not like it." (Johnson Dep., p. 7, lines 13-16.)

There are credibility determinations that must be made by a factfinder to determine whether Johnson's use of force was reasonable, or malicious and excessive, under the circumstances.

Conclusion

For these reasons,

IT IS ORDERED this 31st day of January, 2012 that motion for summary judgment filed on behalf of Defendants Atlantic County, Officer William Johnson, and Officer Gilbert Bermudez [61] is hereby <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>.  As set forth above, Defendant Johnson remains in the case.

IT IS FURTHER ORDERED that the alternative motion for summary judgment made by Harborfields Juvenile Detention Center [64] is hereby <u>GRANTED</u>.

                                       <u>/s/ Joseph H. Rodriguez</u>
                                       JOSEPH H. RODRIGUEZ
                                       U.S.D.J.